**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **KEVIN FAULK**, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>**SEARS ROEBUCK AND COMPANY**,<br><br>　　　　　Defendant. | Case No.: 11-CV-02159 YGR<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION** |

　　　　Plaintiff Kevin Faulk has moved to certify California and nationwide classes of purchasers of tires from Defendant Sears, Roebuck and Company ("Sears") to whom Sears allegedly failed to disclose all terms and conditions of its tire warranties, including the requirement that the purchaser rotate and align the tires at specified intervals. The Second Amended Complaint ("SAC") alleges five causes of action for violations of the California Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.* (First and Second Causes of Action); the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Third Cause of Action); the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* (Fourth Cause of Action); and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* (Fifth Cause of Action).

　　　　Plaintiff seeks to certify a sub-class of California consumers for violations of California state laws (the First through Fourth Causes of Action) and a nationwide sub-class for violations of Federal warranty law (the Fifth Cause of Action). The Court held oral argument on December 11, 2012.

　　　　Having carefully considered the papers submitted and the pleadings in this action, and the oral argument of counsel, for the reasons set forth below, the Court hereby **DENIES** the Motion to Certify.

While Plaintiff has demonstrated at least one issue in common with all putative class members, Plaintiff has not shown that this issue predominates over the myriad individual issues. As such, Plaintiff has not met his burden to show that this case should be litigated on a classwide rather than individual basis.

## I. BACKGROUND

This putative consumer class action arises out of Sears' administration and marketing of tire warranties offered to its customers. According to the SAC, Sears has a policy of denying coverage under its tire warranties to any customer who cannot prove that he or she has had his or her tires rotated at specific intervals and that he or she has had a wheel alignment at least once per year. The terms and conditions of the written warranty provided to the customers do not specify that a customer must rotate their tires at specific intervals, perform a wheel alignment, or be able to prove either as a condition precedent to coverage. Sears denies it has a policy of rejecting warranty coverage for customers who cannot prove tire rotation and wheel alignment at specified intervals.

### A. SEARS' TIRES

Sears is a major retailer of automotive tires in the United States, selling millions of tires to millions of customers every year. (Declaration of Joseph Finney ("Finney Dec."), Dkt. No. 76-1, ¶ 3.) Nationally, Sears operates over 779 auto centers. (*Id.* ¶ 2.) Sears employs over 13,000 people at its auto centers. (*Id.*)

Sears provides purchasers of tires with a Limited Tire Warranty at no charge, and provides its customers with the option of purchasing additional Road Hazard Plus coverage. (*Id.* ¶ 3.) The Limited Tire Warranty covers manufacturing defects and a specified number of miles. (SAC, Ex. 2.) The Road Hazard Plus Agreement covers tires damaged by road hazards while driving. (Finney Dec. ¶ 3.) Sears provides purchasers of tires the receipt, the Limited Tire Warranty, the Road Hazard Plus Agreement, if purchased, and the Tire Care Recommendations. (*Id.* ¶ 7.)

#### 1. *Limited Tire Warranty*

Each tire Sears sells includes a Limited Tire Warranty providing two types of coverage: (1) defect warranty, and (2) tread wearout warranty. (SAC, Exs. 2 & 3.) Under the former, if the tire becomes unserviceable due to a manufacturing defect, as long as the depth of the tread remaining on

the tire exceeds 2/32 of an inch, Sears will provide a replacement tire or prorated credit towards the purchase of a new tire. (*Id*., Ex. 2.) Under the latter, if the depth of the tread remaining on the tire is 2/32 of an inch or less before the tire's guaranteed mileage is reached, Sears will provide a replacement tire or prorated credit. (*Id.*) The pertinent terms of the Limited Tire Warranty are as follows:

> If the front of this invoice indicates that the tire you purchased is warranted for a specified number of miles (the "Mileage Warranty") and the tread depth, as measured across the entire width of the tread, is reduced to 2/32 inch or less prior to expiration of the Mileage Warranty, we will give you a credit toward the purchase of a new tire.

(*Id*.) The Limited Tire Warranty also contains express exclusions to coverage, including "improper repair," "[i]mproper maintenance," "[u]neven or rapid wear caused by mechanical irregularity in the vehicle," and "operation in excess of tire/wheel manufacturers specifications and recommendations." (*Id*.)

### 2.  *Road Hazard Plus Agreement*

The Limited Tire Warranty does not cover tire damage attributed to road hazards encountered while driving, so Sears also offers customers the option to purchase Road Hazard Plus coverage. (Finney Dec. ¶ 3.) With Road Hazard Plus coverage, as long as a tire's tread exceeds 2/32 of an inch, a customer may obtain a replacement tire or a prorated credit when a road hazard causes the tire failure. (SAC, Ex. 3.) The Road Hazard Plus Agreement covers, among other things, tires that become "unserviceable due to normal wear and tear, including Road Hazards, experienced under ordinary driving conditions." (*Id.*) Road Hazard Plus also contains express exclusions to coverage, including "defects in the vehicle," "misalignment," and "failure to ensure proper mounting, balancing, inflation and other preventative maintenance." (*Id.*)

### 3.  *Tire Care Recommendations*

In addition, Sears provides customers with a document titled "Tire Care Recommendations." Sears' Tire Care Recommendations recommend that customers "maintain proper wheel alignment and balance to avoid premature tire wear," advise that "[t]read wear may be improved by periodic tire rotation," and instruct customers to "consult the owner's manual for rotation recommendations for specific vehicles … [i]f no rotation period is specified [in the owner's manual], tires should be

3

rotated at any sign of uneven tire wear." (*Id.*, Ex. 4.) Sears' warranties also provide free tire rotation every 5,000 miles to prolong tread life. (Finney Dec. ¶ 8.)

### B. FAULK'S EXPERIENCE

The SAC alleges that on or about April 23, 2009, Faulk purchased three Falken brand tires from a Sears Auto Center in San Jose, California. (SAC ¶ 7.) The tires Faulk purchased included a Limited Tire Warranty at no additional charge. (*Id.* ¶ 9.) Faulk also purchased a Road Hazard Plus warranty for each of the three tires. (*Id.*)

On December 25, 2010, Faulk was driving in Oregon when one of the tires that he purchased from Sears blew out. (*Id.* ¶ 14.) On December 26, 2010, Faulk took his vehicle to a Sears Auto Center in Portland, Oregon, where he was informed that, in addition to needing to replace the tire that blew out, the other Falken tires he had purchased needed to be replaced due to wear. (*Id.*) "Named Plaintiff requested that Defendant honor both its Limited Tire Warranty and Road Hazard Plus Warranty but Defendant refused, informing Named Plaintiff that the warranties would be honored only if Named Plaintiff could demonstrate that a wheel alignment had been performed at least once a year and that the tires had been rotated at intervals of no more than every 6,000 miles since the dates of their purchase. No other reason was given for Sears' refusal to honor the warranties." (*Id.*) The SAC further alleges that prior to December 26, 2010, Faulk "was unaware of Defendant's policy of denying responsibility under both its express warranty and its Road Hazard Plus Agreement to any customer who cannot prove that he or she has had their tires rotated at specific intervals and has had a wheel alignment at least once a year." (*Id.* ¶ 15.) According to the SAC, because Faulk was "[s]tranded far from home and left with no other choice, Named Plaintiff purchased two new tires from the Sears Auto Center in Portland to replace two of the tires purchased in April 2009." (*Id.* ¶ 16.) Faulk also purchased the optional Road Hazard Plus coverage for the two new tires. (Deposition of Kevin Faulk ("Faulk Dep."), Dkt. No. 78-1, at 156:13-14.)

On or about January 21, 2011, Faulk went to the Sears Auto Center located on Tully Road in San Jose for a wheel alignment. (SAC ¶ 17.) The SAC alleges that Sears' personnel refused to perform an alignment unless the final tire from the April 23, 2009 sale was replaced. (*Id.*) Sears again refused to provide warranty coverage, giving the same reason as given by the employee at the

Portland store: Sears would not give any warranty refund and/or credit unless the owner could prove that the tires had been rotated every 5,000 miles and aligned at least once per year. (*Id.*) Faulk "purchased two [more] tires, one as a replacement for the third tire purchased in April, 2009." (*Id.*) Faulk also purchased the optional Road Hazard Plus coverage for the two new tires. (Faulk Dep. at 163:18-164:4.)

### C.   CUSTOMER COMPLAINTS

Faulk believes that his experiences are not unique, and that many other customers have faced a blanket denial of warranty coverage conditioned on proof of specific maintenance that is not part of the warranty or any other documents provided by Sears in connection with the tires it sells. Discovery uncovered scores of customer complaints regarding Sears' refusal to provide coverage under either the Road Hazard Plus Agreement or Limited Tire Warranty for failure to rotate tires or align the wheels at particular intervals. (*See* Declaration of T. John Kirk ("Kirk Dec."), Dkt. No. 73-2, Ex. B.) Additionally, in 2009, Ron Burley, an investigative journalist and writer of an AARP magazine column titled "On Your Side" wrote a story titled "Sears' Rubber Warranty" detailing the experience of an AARP reader who felt he was refused warranty coverage based on undisclosed warranty terms. (*See* SAC, Ex. 5; Declaration of Ron Burley, Dkt. No. 72-1, Ex. A.)

### D.   PROCEDURAL HISTORY

On May 2, 2011, Faulk filed this putative class action alleging that Sears has violated federal and California law in its administration of the Limited Tire Warranty applicable to tires sold online and in Sears' retail outlets and auto centers, and in Sears' marketing and selling of the Road Hazard Plus Agreement applicable to those tires. Specifically, the SAC alleges that "Sears has a policy of denying responsibility under both its express warranty and Road Hazard Plus Agreement to any customer who cannot prove that he or she has had their tires rotated at specific intervals and has had a wheel alignment at least once per year. None of the written documents provided to the customers specifies that the customer must rotate their tires at specific intervals, perform a wheel alignment, or be able to prove either as a condition precedent to coverage under either the express warranty or the Road Hazard Plus service agreement." (SAC ¶ 12.)

Faulk now seeks to certify the following California and nationwide sub-classes pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure:

<u>California Class</u>:  All persons who, from May 2, 2007 to January 30, 2011, purchased (1) a Road Hazard Plus Agreement issued by Sears and/or (2) tires that are covered by a Limited Tire Warranty issued by Sears and who (1) resided within the state of California at the time of the purchase and (2) purchased the tires within the state of California; and

<u>Nationwide Class</u>:  All persons who, from May 2, 2007 to January 30, 2011, purchased (1) a Road Hazard Plus Agreement issued by Sears and/or (2) tires that are covered by a Limited Tire Warranty issued by Sears.

Faulk alleges that he and the putative class members were injured because Sears "has refused to provide the services it offered at the time Class Members' [*sic*] purchased the tires."  (SAC ¶ 28.)

## II. LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979) (quoted in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011)).  Because a representative action is the exception and not the norm, the party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rules 23(a)—numerosity, commonality, typicality, and adequacy[1]—and at least one of the three requirements under Rule 23(b)[2]

---

[1]     (a) Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
       (1) the class is so numerous that joinder of all members is impracticable;
       (2) there are questions of law or fact common to the class;
       (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
       (4) the representative parties will fairly and adequately protect the interests of the class.
Fed. R. Civ. P. 23(a).

[2]     (b) Types of Class Actions.  A class action may be maintained if Rule 23(a) is satisfied and if:
       *   *   *
       (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
       (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

are met. *Wal-Mart*, *supra*, 131 S. Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("of overriding importance, courts must be mindful that the Rule … sets the requirements that they are bound to enforce … . The text of [the Rule] … limits judicial inventiveness."). While the Court retains broad discretion to certify a class, the Court must conduct a "rigorous analysis" to confirm that the plaintiff has in fact established the requirements of Rule 23 to ensure that a departure from the general rule of individual litigation is justified. *General Tel. Co. v. Falcon*, 457 U.S. 147, 160-61 (1982).

## III. DISCUSSION

A moving party must demonstrate compliance with the prerequisites of both subparts 23(a) and 23(b). Here, because Faulk's failure to establish any of the requirements of Rule 23(b) proves dispositive, the Court limits its analysis to that subpart. Rule 23(b) lists the three types of class actions. Faulk seeks certification for two of them: (A) an injunctive or declaratory relief class under Rule 23(b)(2); and (B) a damages class under Rule 23(b)(3). The Court reviews each in turn.

### A. RULE 23(b)(2) REQUIREMENTS

To certify an injunctive or declaratory relief class under Rule 23(b)(2) as Faulk proposes, he must establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class," *and* "that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Faulk merely argues that the requirements of Rule 23(b)(2) are satisfied because Sears' conduct is common to every class member

---

action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
   (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
   (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
   (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
   (D) the likely difficulties in managing a class action.
Fed. R. Civ. P. 23(b).

7

1  but Faulk fails to address in any manner whether "final injunctive relief or corresponding declaratory
2  relief is appropriate respecting the class as a whole."[3]  For that reason, Faulk has not met his burden
3  to establish that a class should be certified under Rule 23(b)(2).

4  Therefore, the Court **DENIES** the motion to the extent it seeks to certify a class under Rule
5  23(b)(2).[4]

### B.   RULE 23(b)(3) REQUIREMENTS

To certify a damages class under Rule 23(b)(3), as Faulk proposes, he must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Where questions common to class members represent significant issues that can be resolved in a single adjudication "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Amchem Products*, *supra*, 521 U.S. at 623 (internal quotation marks and citation omitted).  On the other hand, "[w]here, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004).  Consequently, the "common" legal or factual issues must be of sufficient importance to the case that the Court is convinced that the most efficient, fair and sensible method of adjudication is through a class action. Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10-C § 10:274 (citing *Califano*, *supra*, 442 U.S. at

---

[3] Sears raises this issue in its opposition; Faulk's reply entirely ignores his request for certification under part (b)(2).  At oral argument counsel for Plaintiff was questioned about the relief Faulk would seek for a Rule 23(b)(2) class, counsel suggested that Sears could be required to revise its warranties to include the allegedly non-disclosed warranty terms.  This relief is not requested in the SAC, which underscores why a court cannot rely upon the assurances of counsel that class certification is appropriate, but instead, the Court must conduct a rigorous analysis to confirm that the requirements of Rule 23 have been met before certifying a class.

[4] Under Rule 23(b)(2), claims for *monetary* relief may not be certified "where (as here) the monetary relief is not incidental to the injunctive or declaratory relief." *See Wal-Mart*, *supra*, 131 S. Ct. at 2557. Further, Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id*.  For these two additional and independent reasons, certification under Rule 23(b)(2) is not appropriate.

701). Accordingly, Rule 23(b)(3) requires Faulk to provide a "suitable and realistic plan for trial of the class claims," because this Court cannot "rely merely on assurances of counsel that any problems with predominance or superiority can be overcome." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001). Thus, the Court will examine, in turn, (1) the common questions; (2) predominance; and (3) superiority of the class action mechanism.

### *1.  The Common Question*

The Court starts the predominance inquiry by identifying the common question. A common question is one that, when answered as to one class member, will advance the resolution of the claims of all the members of the putative class. *Wal-Mart*, *supra*, 131 S. Ct. at 2551 (their claims must depend on a common contention and "be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."). Faulk asserts that this action is suitable for class treatment because two questions can be answered on a classwide basis, namely: whether (1) Sears requires specific maintenance as a condition of honoring its warranties and (2) the warranty terms and conditions are adequately disclosed. In essence, Faulk asserts that Sears has undisclosed terms in its written warranties.

Sears contends that Faulk has not met his burden to demonstrate that any common question of fact or law exists. Sears does not challenge Faulk's contention that the questions posited are common to the entire putative class or that the questions are capable of a common answer. Instead, Sears takes issue with the proof Faulk has submitted to show that Sears has such a policy. Sears argues that the motion is not based on evidence[5] of an actual policy, but, rather, on the allegation that Sears may

---

[5] Sears has made a number of hearsay objections to the evidence submitted in support of Plaintiff's motion for class certification. The objection to evidence is **OVERRULED**. For purposes of the class certification inquiry, the evidence need not be presented in a form that would be admissible at trial. 6A Fed. Proc., L. Ed. § 12:281 (citing *Dominguez v. Schwarzenegger*, 270 F.R.D. 477 (N.D. Cal. 2010)). "The court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [Motion for Class Certification]." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011) *reconsideration denied*, 2011 WL 3802769 (C.D. Cal. Aug. 23, 2011) (quoting *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008) *overruled on other grounds*, 666 F.3d 581 (9th Cir. 2012)). Given the relaxed evidentiary standard at the class certification stage, the Court will exercise its discretion and consider the evidence necessary for resolution of the motion.

have a policy.[6] Faulk, however, has gone beyond the pleadings and provided evidence to support his allegations that such a policy exists.[7]

Sears argues that Faulk has failed to prove that its warranties contain undisclosed policy terms or conditions, in essence, arguing against certification because it believes that Faulk will lose on the merits. However, proof that there is "in fact" such a policy is not a necessary precondition to finding commonality. The inquiry into whether questions of law or fact common to the class exist does not require the Court to find that the answers to those common questions will be in plaintiff's favor. *Ellis*, *supra*, 657 F.3d at 983 n.8 ("The district court is required to examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims."). The Court need not resolve the merits at this stage of the proceedings. *Id*.[8]

If such a nationwide policy exists, as Faulk argues, then the policy is common to all class members and the evidence necessary to prove Faulk's contention that his tire warranties had undisclosed terms will establish the same for every other class member's warranty. Alternatively, if no such policy exists, as Sears maintains, then the disproof of the validity Faulk's claim will show the same as to all other class members. Thus, the Court finds the existence of a common question as to whether Sears disclosed all terms and conditions in its standard written warranties.

---

[6] Additionally, Sears argues the evidence shows that even if such a policy exists, that the alleged policy was not applied uniformly to all class members, and thus, determining the reason that a warranty claim was denied is an individual inquiry. Sears also argues that the class Faulk seeks to certify includes customers who never made warranty claims; never had claims denied and therefore were never injured by the alleged policy. This misunderstands the warranty class he is seeking to certify, which is a class of purchasers of warranties that contained undisclosed terms in violation of state and federal law, not a class of consumers whose warranties were breached based upon such undisclosed warranty terms.

[7] In particular, Faulk has provided scores of customer complaints replete with statements from Sears' employees that failure to rotate tires will void the warranty. (Kirk Dec., Ex. B.) Additionally, Plaintiff provides a quote from Larry Costello, Sears' so-called Vice President of Customer Complaints, who stated that the "warranty language … may be unclear." (*Id.*, Ex. D at 45:23-46:5.) Sears also has an internal training document, which trains its employees that "not rotating the tires when necessary to help tires wear evenly" is not covered under the Road Hazard Plus warranty. (*Id.*, Ex. G.)

[8] Unlike the allegations in *Wal-Mart*—that supervisors exercised discretion in a discriminatory manner when making hiring and promotion decisions—the allegations in this lawsuit are of a uniform national policy to require proof of compliance with warranty terms not disclosed in a written warranty.

The Court also finds this common question relates to each of the claims for which Faulk seeks class certification. Both the Magnuson-Moss Warranty Act ("MMWA") and the California Song-Beverly Consumer Warranty Act require that a warrantor make a full and conspicuous disclosure of the terms and conditions of the warranty. 15 U.S.C. § 2302(a); Cal. Civ. Code § 1793.1. Faulk's claims under the California Consumers Legal Remedies Act ("CLRA") and the California Unfair Competition Law ("UCL") are predicated on the alleged non-disclosure of terms and conditions of the warranty. Thus, Faulk has demonstrated a common element for all claims for which he seeks class certification.

### 2. *Predominance*

The predominance inquiry under Rule 23(b)(3) requires that Faulk demonstrate that "questions of law or fact common to class members *predominate* over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3) (emphasis supplied).

In determining whether common questions predominate, the Court identifies the substantive issues related to plaintiff's claims (both the causes of action and affirmative defenses); then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried. *See* Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10-C § 10:412 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011) ("Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."). The predominance inquiry requires that plaintiff demonstrate that common questions predominate as to each cause of action for which plaintiff seeks class certification. *Amchem Products*, *supra*, 521 U.S. at 620. Accordingly, the Court will address predominance as to each of Faulk's substantive claims as follows: (a) Warranty Claims; (b) CLRA; and (c) UCL.

#### a)   <u>Warranty Claims.</u>

Both the MMWA and the California Song-Beverly Consumer Warranty Act require that a warrantor make a full and conspicuous disclosure of the terms and conditions of the warranty. 15 U.S.C. § 2302(a); Cal. Civ. Code § 1793.1. Thus, to establish liability under either statute, a plaintiff must prove that a defendant failed to disclose all terms and conditions of the warranty. Here, the written warranties are the same, and Sears either disclosed all terms and conditions in its written

warranties or it did not. Therefore, the question of whether all warranty terms were disclosed in Sears' standard written warranties is common to the claims of all class members. None of the individual questions that Sears has raised[9] is relevant to this determination.[10]

To recover for a violation of either warranty act, it is not enough that the warrantor failed to disclose all terms of the warranty; the consumer also must have been damaged by the violation. The MMWA provides that: "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Similarly, the California Song-Beverly Consumer Warranty Act provides that: "Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794(a).

Faulk argues that common questions regarding injury sustained predominate as a result of Sears' failure to disclose all warranty terms. However, Faulk does not identify the injury, the remedy for the injury, or the common questions regarding such injury. What is more, it is not obvious what injury the class members sustained or what redress Faulk seeks on behalf himself and the absent class members.[11]

---

[9] Notwithstanding that the only state warranty law implicated in this action is the California Song-Beverly Consumer Warranty Act for the California class—Plaintiff's claim under the MMWA does not rely upon state warranty law—Sears argues that Plaintiff's warranty claims are not suitable for class treatment because state warranty laws differ. Furthermore, Sears argues that the failure to provide the terms of a warranty is not common to all class members because Faulk does not allege that Sears failed to provide its customers with its written warranties. These individual questions need not be answered to adjudicate the disclosure element of the warranty causes of action.

[10] Sears also challenges the Court's jurisdiction to hear Plaintiff's MMWA claim as a class action. The MMWA provides jurisdiction in district courts over class actions if each plaintiff's claim exceeds $25.00, the total amount in controversy exceeds $50,000.00, and there are at least 100 named plaintiffs. 15 U.S.C. § 2310(d)(3). Plaintiff correctly points out that the Class Action Fairness Act, 28 U.S.C. § 1332(d) provides an independent basis for jurisdiction and that this case meets those jurisdictional requirements.

[11] In his prayer for relief, Plaintiff seeks the following damages awards: (1) "all monies paid by Plaintiff and the Class Members for any repairs that had to be made by third party companies because Sears refused to honor the written terms of its express warranty and Road Hazard Plus Agreement"; (2) "actual and punitive damages"; and (3) "attorneys' fees and costs." (SAC at 13.) Plaintiff is not seeking

Although Faulk has identified a common question regarding liability—whether Sears disclosed all warranty terms—he has failed to show that this question "predominate[s] over any questions affecting only individual members," including questions with respect to the injury sustained under the MMWA and the California Song-Beverly Consumer Warranty Act. Fed. R. Civ. P. 23(b)(3). Faulk's burden in moving for class certification is to establish that the requirements of Rule 23(b) have been met. His conclusory assertion that common questions predominate does not meet this burden.

Based on the foregoing, Faulk has not met his burden to show predominance as to either of his warranty claims.

### b) *CLRA Claim.*

"The CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting Cal. Civ. Code § 1770(a)). Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. *Id.* (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (Cal. Ct. App. 2006)). Among the practices made unlawful by the CLRA, three are alleged here: "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have"; "[a]dvertising goods or services with intent not to sell them as advertised"; and "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Cal. Civ. Code § 1770(a)(5), (9), (14). In addition, a consumer seeking to recover damages under the CLRA must not only be exposed to an unlawful practice but also have relied upon and been harmed by the practice. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) (citing *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983 (Cal. Ct. App. 2010)).

---

consequential damages caused by Sears' alleged breach of warranty by enforcing undisclosed terms. This leaves "actual and punitive damages" and "attorneys' fees and costs" as the only possible remedies. Plaintiff has not identified any actual damages suffered and the Court will not certify a damages class solely to allow Faulk's attorneys to recover their fees and costs.

Faulk argues that the predominance requirement is satisfied because "[t]he evidence necessary to prove violation of the CLRA will of necessity focus upon Sears' conduct and not that of the individual Class Members." Faulk does not identify the evidence or explain how such unidentified evidence is capable of proving the claims of all class members "in one stroke." Faulk's conclusory statement does not meet his burden to show that common questions predominate.

In its opposition, Sears points out that Faulk's CLRA claim will require individual proof of reliance, and that the individual issues of materiality of the representations predominate. Faulk counters that where the same material misrepresentations, or as here, omissions, were made to the entire class, an inference of reliance arises as to the entire class. With respect to omitted terms in a written contract, a classwide presumption of reliance that the contract discloses all terms may be justified where the allegedly incomplete disclosures were uniformly made to all members of the proposed class.[12] However, Faulk has not demonstrated that the issue of whether the allegedly omitted terms are material is a common rather than individual issue. Although, Faulk argues that materiality is an objective standard that can be determined on a classwide basis, Faulk's own tire purchase history and deposition testimony cast doubt on whether Faulk himself found the alleged omissions material. That Faulk continued to purchase Sears tires and the Road Hazard Plus warranty even after he became aware of Sears' allegedly unlawful policy to deny warranty coverage[13] shows, at least as to the Named Plaintiff, materiality may not be susceptible to proof by objective criteria.

It is Faulk's burden in moving for class certification of his CLRA claim to establish that common questions predominate. Faulk does not point to common proof that would establish the materiality element of his own claim and his conclusory arguments do not meet that burden. This Court cannot "rely merely on assurances of counsel that any problems with predominance or superiority can be overcome." *Zinser*, *supra*, 253 F.3d at 1189.

---

[12] Plaintiff alleges that Sears violated the CLRA by "[a]dvertising goods or services with intent not to sell them as advertised" (SAC ¶ 56 (quoting Cal. Civ. Code § 1770(a)(9))), but has not identified the advertisement(s) or whether he can provide proof that class members were exposed to the advertisement(s) and hence, could have relied upon the advertisement(s) in making a purchasing decision.

[13] Faulk alleges that he made his second tire purchase because he was "[s]tranded far from home and left with no other choice." (SAC ¶ 16.) However, Faulk does not allege any similar lack of alternatives at the time of his third tire purchase from Sears.

14

Based on the foregoing, the Court finds that Faulk has not carried his burden to show that the common issue of whether all contract terms were disclosed to members of the putative class predominates over these individual issues of reliance and materiality.

Therefore, Faulk has not met his burden to show predominance as to his CLRA claim.

### c)  *UCL Claim.*

The UCL prohibits unfair competition which it defines as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Each prong of the UCL offers a separate and distinct theory of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1128 (9th Cir. 2009) (citing *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (Cal. Ct. App. 1999). Faulk alleges that Sears violated both the unfair prong and the unlawful prong.

Faulk's claim under the unfair prong of the UCL claim is not suitable for class treatment because it requires individualized proof of breach of contract. An act or practice is "unfair" when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Smith v. State Farm Mutual Automobile Insurance Co.*, 93 Cal. App. 4th 700, 719 (Cal. Ct. App. 2001). According to Faulk, Sears violated the unfair prong of the UCL by "systematically breaching its contracts with consumers and the general public by conditioning service under both its express warranty and Road Hazard Plus Agreement upon terms not contained in the written agreements." (Mot. 23 (quoting SAC ¶ 46).) Faulk has not shown that systematic breach of contract is susceptible to common proof or that systematic breach of contract can be resolved on a classwide basis (irrespective of whether enforcing undisclosed contract terms violates the unfair prong of the UCL).[14]

Faulk's claim under the unlawful prong of the UCL claim also is not suitable for class treatment. To establish an "unlawful" practice under the UCL, a plaintiff must prove a violation of

---

[14] Questioned at oral argument on this precise point, counsel for Plaintiff suggested a claims process requiring individualized proof of liability and damages. Counsel proposed using Sears' service records to determine which customers were denied warranty coverage, and then determining liability and damages by requiring each customer to submit proof of maintenance performed by third-party companies using customer receipts. Classwide treatment of these claims would *not* be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

some other law. *Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (Cal. 1999). Faulk predicates his UCL claim on the alleged violations of the warranty laws and CLRA. The proof necessary to establish violation of those other laws, including reliance, causation and damages, is the same proof that would establish a violation of the unlawful prong of the UCL. Because Faulk has failed to show these other claims are suitable for classwide treatment, it follows that his UCL also is not suitable for classwide treatment.[15] Moreover, like the CLRA, to recover under the UCL, a plaintiff must establish reliance, which Faulk has not shown can be done on a classwide basis.

Based on the foregoing, Faulk has not met his burden to show predominance as to his UCL claim.

### 3. Superiority

To certify a Rule 23(b) class action, Faulk also must show that a class action is superior to individual suits. Rule 23 lists four, non-exhaustive, factors relevant to the decision of whether a class action is superior. Those factors are:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). The first three factors, (A), (B), and (C) support certification: In this instance, individual recovery likely would be modest making a class action a superior form of litigation. Faulk is unaware of any individual litigation concerning the issues raised herein. Given

---

[15] The damages Faulk seeks under the UCL include "an order awarding restitution and disgorgement of all charges paid by Plaintiff and the Class Members and/or ill-gotten gains realized by Sears as a direct result of Sears' unlawful, unfair and/or fraudulent business practices complained of" in the SAC. Faulk does not address whether the elements of reliance, causation or damages are suitable for classwide treatment; nor does Faulk address whether any such common issues predominate over individual issues. Faulk's burden under Rule 23(b)(3) requires that he show that class treatment is appropriate for these issues. *See Amchem Products*, *supra*, 521 U.S. at 620.

that potentially millions of lawsuits could be brought, it is desirable to concentrate any litigation in a single forum.[16]

However, Faulk does not address the fourth factor, "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). The Court will not assume there will be no difficulties managing the proposed class action where a plaintiff does not claim there will be none. Indeed, after conducting the predominance analysis, the Court has significant concerns that each member of the putative class may need to litigate myriad individual issues to establish his or her own right to recovery. Faulk's silence on the manageability of these individual issues does nothing to alleviate these concerns. Due to these concerns, this factor weighs heavily against class certification.

Accordingly, the Court concludes that Faulk has failed to meet his burden to show that a class action is superior to individual suits.

## IV. CONCLUSION

For the reasons set forth above, the Motion for Class Certification is **DENIED**.

This Order Terminates Docket Number 72.

**IT IS SO ORDERED**.

Date: April 19, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[16] Sears believes that a class action is not a superior vehicle for resolving these claims because "[a]ny plaintiff whose warranty claims were wrongfully denied could bring an individual claim against Sears, and could do so in small claims court, often without the need for an attorney, which Faulk reluctantly admits." The issue is not whether individuals *can* bring individual actions, but whether a class action is superior to those individual actions. Sears' argument does not address this issue.